### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PLANNED PARENTHOOD GULF COAST, INC.; JANE DOE #1; JANE DOE #2; AND JANE DOE #3,<br>    *Plaintiffs,*<br>v.<br><br>KATHY KLIEBERT, SECRETARY, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,<br>        *Defendant* | No. 3:15-cv-00565-JWD-SCR |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant, Kathy Kliebert, in her official capacity as Secretary of the Louisiana Department of Health and Hospitals, files this opposition to Plaintiffs' Motion for Temporary Restraining Order.  [Rec. Doc. 4].

On August 3, 2015, the Louisiana Department of Health and Hospitals ("LDHH"), in four separate letters to Planned Parenthood Gulf Coast ("PPGC"), advised PPGC that, effective thirty (30) days from receipt of notice, PPGC's four Louisiana Medicaid provider agreements would be terminated for the following provider types:  Laboratory (provider no. 45802); Physician Group-New Orleans (provider no.133673); Physician Group-Baton Rouge (provider no. 133689) and Family Planning Clinic (provider no. 91338).  LDHH's notices of terminations to PPGC were undertaken pursuant to La. R.S. 46:437.11, subsection D(1), which provides that the provider agreement shall be terminable by either party thirty

days after receipt of written notice.  Those LDHH termination notices also gave PPGC thirty (30) days to initiate an administrative appeal pursuant to La R.S. 46:107.  As of filing of this Memorandum, Plaintiffs have not exercised this right to seek administrative review of LDHH's four termination notices.

In Plaintiffs' complaint and other pleadings, Plaintiffs seek relief pursuant to 42 U.S.C § 1983 and contend that LDHH has violated the Medicaid free-choice-of-provider provisions of Section 1902(a)(23) of Title XIX of the Social Security Act. Plaintiffs allege that, unless this Court enters injunctive relief, they will suffer irreparable injury as a result.  Plaintiffs applied for entry of a Temporary Restraining Order on Tuesday, August 25, 2015.  [Rec. Doc. 4].

## STANDARDS OF REVIEW

A temporary restraining order ("TRO") "is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quotations omitted).  The movant "must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order . . . can be granted." *Clark v. Pritchard*, 812 F.2d 991, 993 (5th Cir. 1987); see also *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (noting that the analogous preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion") (quoting 11A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE §2948, 129-30 [2d ed. 1995]).

Thus, to obtain a TRO, the movant bears the burden of clearly proving each of the following criteria: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to LDHH, and (4) that granting the preliminary injunction will not disserve the public interest." *Holland Am. Ins. V. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1974); *Scott v. Livingston Parish Sch. Bd.*, 548 F. Supp.2d 265, 266-67 (M.D. La. 2008) (discussing TRO factors).

In addition, if a court lacks subject-matter jurisdiction in an action, it must dismiss the action. F.R.Civ.P. 12(b)(1) and 12(h)(3); *Randall D. Wolcott v. Sebelius,* 635 F.3d 757, 762 (5th Cir. 2011).

## ARGUMENT

### I.   Plaintiffs cannot show a substantial likelihood that they will prevail on the merits

Based on the application of all applicable federal laws, read in conjunction with one another and applied to the specific facts of this case, and relevant state procurement and contracting provisions, it is quite clear that Plaintiffs cannot prevail on the merits in this case.

### A.   Plaintiffs do not have a private right of action under 42 U.S.C. 1396a(a)(23)

A plaintiff seeking §1983 redress must assert the violation of a federal right, not merely of federal law. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103,

106 (1989).  Determining what remedies are available for violations of a statute is a matter of statutory construction.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just the private right but also a private remedy").

There are three factors used to determine whether a statutory provision creates a privately enforceable right: (1) whether the plaintiff is an intended beneficiary of the statute; (2) whether the plaintiffs' asserted interest are not so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute imposes a binding obligation on the State.  *Blessing v. Freestone*, 520 U.S. 329, 338 (1997).

But a more foundational issue here is that this Court lacks subject-matter jurisdiction over this case, which is dispositive of Plaintiffs attempt to obtain a temporary restraining order.  In accord with the reasoning in the U.S. Supreme Court's recent pronouncement in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S --, 135 S.Ct. 1378 (2015), the Medicaid Act's exclusive provision for the enforcement of 42 U.S.C. § 1396a(a)(23) is the withholding of Medicaid funds by the Secretary of Health and Human Services.  *See* 42 U.S.C. § 1396c.

Medicaid regulations permit States to establish "reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2).  By conferring judgment of a State's conduct upon the Secretary of Health and Human Services alone, Congress clearly "wanted to make the agency remedy that it provided

4

exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decision-making," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional in appropriate application of the statute in a private action." *Armstrong,* Slip Op. 7, citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment).

Issued by the U.S. Supreme Court on March 15, 2015, *Armstrong* held that the neither the Medicaid Act itself, nor the Supremacy Clause, provided a private right of action for Medicaid providers or recipients to seek a private remedy against a State official who has allegedly violated the terms of the Medicaid Act's provisions. *Id.* According to the Supreme Court "the Medicaid Act implicitly precludes private enforcement," Slip Op. at 6, of one of its provisions. Therefore the Court concluded:

> [T]he sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's "breach" of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services. 42 U. S. C. §1396c. As we have elsewhere explained, the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'

*Armstrong,* 135 S.Ct. 1378, Slip Op. at 7 (2015) (*quoting Alexander* v. *Sandoval*, 532 U.S. 275, 290 (2001)).

As discussed in *Armstrong,* Section 1396a of the Medicaid Act establishes the requirements a State must adhere to before the Centers for Medicare and Medicaid Services ("CMS") will approve its Medicaid state plan. Slip Op. at 1. The state plan is an agreement between CMS and the State. Neither PPGC nor any of the

individual recipient plaintiffs in this case are parties to that agreement. "Spending

Clause legislation like Medicaid 'is much in the nature of a contract." *Armstrong,*

135 S.Ct. at _____, Slip Op. at 11 (quoting *Pennhurst State School and Hospital v.*

*Halderman*, 451 U.S. 1, 17 (1981).

> More fundamentally, however, the modern jurisprudence permitting
> intended beneficiaries to sue does not generally apply to contracts
> between a private party and the government—**much less to**
> **contracts between two governments**. Our precedents establish
> that a private right of action under federal law is not created by mere
> implication, but must be 'unambiguously conferred,' *Gonzaga*, 536
> U.S., at 283. Nothing in the Medicaid Act suggests that Congress
> meant to change that for the commitments made under §30(A).

*Armstrong*, Slip Op. at 11 (some internal quotes omitted) (emphasis added).

Thus, in accord with *Armstrong,* PPGC and the individual plaintiffs are not

the intended beneficiaries of 42 U.S.C. 1396a(a)(23) and may not pursue equitable

relief pursuant to 42 U.S.C. § 1983.  *Armstrong,* Slip Op. at 11 (2015) ("We doubt, to

begin with, that providers are intended beneficiaries (as opposed to mere incidental

beneficiaries) of the Medicaid agreement, which was concluded for the benefit of the

infirm whom the providers were to serve, rather than for the benefit of the

providers themselves.").

Under the first prong of the test, LDHH contends in accord with *Armstrong*

that the Plaintiffs are not the intended beneficiaries of 42 U.S.C. 1396a(a)(23).  *Id.*

Section 1396a of the Medicaid Act establishes the requirements a State must

adhere to before CMS will approve its Medicaid state plan.  The state plan is an

agreement between CMS and the State, and compliance with the Medicaid Act

entitles the State to federal financial participation.  The provider plaintiff PPGC is

clearly not the intended beneficiary of the State Plan provision or the applicable federal Medicaid statute.  LDHH contends that the statute, in its broadest interpretation in favor of plaintiffs, only stands for the proposition that recipients are not governmentally directed or "locked in" to a certain provider.  A Medicaid provider certainly cannot argue that they are somehow entitled to a certain recipient or certain portion of recipients.  Further, as more explicitly set forth above and in the following sections, providers do not even have a federal right to be a Medicaid provider at all.  Likewise, the individual recipients are not entitled to a particular Medicaid provider entity.  Instead, the federal Medicaid statute stands for the proposition that Medicaid recipients, as a whole, should not have their freedom of choice of qualified providers impinged upon without proper waivers from the federal government.  As the *O'Bannon* case made clear, a Medicaid recipient is not entitled to a particular provider but is to be allowed a choice of qualified providers free from government interference.  As explained by the *O'Bannon* Court, "[w]hen enforcement of those standards requires decertification of a facility, there may be an immediate, adverse impact of some [recipients].  But surely that impact, which is an indirect and incidental result of the Government's enforcement action, does not amount to deprivation of any interest in life, liberty or property." *O'Bannon v. Town Court*, 447 U.S. 773, 787 (1980).

The second prong of the test is whether the Plaintiffs' interests are vague and amorphous as to be beyond the competence of the judiciary to enforce.  The Medicaid Act's "free choice of provider" provisions are found at §1902(a)(23) of the

Social Security Act, 42 U.S.C. §1396a(a)(23).  Under subsection (A), State Medicaid plans must allow beneficiaries to obtain medical care from "any institution, agency, community pharmacy or person, **qualified** to perform the service or services required." 42 U.S.C. §1396a(a)(23)(A)(emphasis added).

LDHH contends that the terms of §1396a(a)(23), like Section 30(a) in the *Armstrong* decision, are vague and subject to State interpretation in so far as the statute lacks any definition of "**qualified** to perform the service or services required."  The term "qualified" could be interpreted by the State to mean that the provider simply holds the requisite license for the applicable scope of service.  The term could also be interpreted by the State to mean that the entity is completely free of any government proceeding whether civil or criminal or departmental.  The term could also be interpreted by the State to mean that the provider is free from any Medicaid billing problems amounting to fraud or abuse.  The term could also be interpreted by the State to mean that the provider conforms to the ethical standards shared by the State in which it seeks to operate.  Finally, the term could also be interpreted by the State to stand for the proposition that lack of a signed provider agreement evidences lack of being qualified.  In short, the State's determination of "qualified" is a "judgment-laden standard" that was intended by Congress and the Medicaid statute to be enforced by CMS and the federal Secretary of Health and Human Services alone.  *Armstrong*, Slip Op. at 7.

Therefore, as explained in *Armstrong*, PPGC's "relief must be sought initially through [CMS via] the Secretary rather than through the courts." *Armstrong*, Slip

Op. at 10.  This conclusion was based on the reasoning that "the sole remedy Congress provided for the State's failure to comply with Medicaid requirements . . . is the withholding of funds by the Secretary of Health and Human Services." *Armstrong*, Slip Op. at 7.

The final prong of the test is whether the statute imposes a binding obligation on the State.  The purpose of §1396a(a) is to establish the parameters a State must be willing to agree to in order for CMS to approve its state plan.  The LDHH agrees that it must comply with its approved state plan in order to received federal funds.  LDHH is indeed offering freedom of choice required by the statute. There are 2,010 qualified providers that provide the same and additional medical services than those provided by the Plaintiff's two locations in Louisiana. [See Declaration of Ruth Kennedy ¶8].  Absent a compliance action from CMS, the LDHH's federal regulator, the LDHH is in compliance with its State Plan. Therefore, none of the prongs of the test are sufficiently met in order for §1396a(a)(23) to create a privately enforceable right.

If this Honorable Court does rule that Plaintiffs demonstrate such a right exists, there is a rebuttable presumption that it is enforceable under §1983.  This means that dismissal is still proper if Congress specifically foreclosed a §1983 remedy.  *Smith v. Robinson*, 468 U.S. 992, 1005, (either expressly, by forbidding recourse to §1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual §1983 enforcement), *Livadas v. Bradshaw*, 512, U.S. 107,133 (1996).

It is clear that Congress impliedly foreclosed a §1983 action by creating a comprehensive enforcement scheme as discussed by the Supreme Court in *Armstrong*, which considered whether Medicaid providers can sue to enforce 42 U.S.C. §1396a(a)(30)(A).  The Medicaid Act instructs the States on what is required to be in their State plan in order for the CMS to give their approval.  Once the State has an approved Medicaid state plan, it must comply with those terms in order to receive federal funds.

The *Armstrong* Court held that the sole remedy that Congress provided for a State's failure to comply with Medicaid's requirements is the withholding of Medicaid funds by the Secretary of Health and Human Services. 42 U.S.C. §1396c. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Armstrong*, Slip Op. at 7 (*quoting Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).  The Court also reasoned that the complexity associated with enforcing §30(A), along with the express administrative remedy found in §1396c, establishes that the Medicaid Act precludes private enforcement of §30(A) with the courts.  The same complexity applies to State's determination of which providers are "qualified" under the free-choice-of-provider provision.

Just as the provision at issue in *Armstrong*, the federal law Plaintiffs allege that LDHH has violated, 42 U.S.C §1396a(a)(23), is likewise contained within the Medicaid Act.  Therefore, under *Armstrong*, the sole remedy for the State's alleged failure to comply with §(a)23 is the withholding of Medicaid funds by CMS, with the

State retaining its full rights of administrative and judicial appeal of such a decision.  CMS, arguably, could also seek injunctive relief to compel compliance with the Medicaid Act.

As evidence that this remedial scheme is available and workable, this court is asked to take notice that LDHH has had two telephone conferences with CMS in regards to the conduct before this Court.  In those conversations, CMS did advise LDHH that it has the power to withhold Medicaid funds or seek injunctive relief for failure to comply with the Medicaid Act, of which Plaintiffs are well aware. [See Declaration of Ruth Kennedy ¶ 9-11].  As of the date of the filing of this Memorandum, CMS has not taken any action against LDHH for terminating the four provider agreements of PPGC, and the State is continuing its on-going investigation to determine whether it will provide additional notice of termination pursuant to specific findings.  The bottom line is that the Plaintiffs' remedy is not before this court, but rather to bring their complaint to either the State's administrative remedy and/or to CMS.  There does exist a comprehensive administrative scheme that is meant to resolve this issue, and it is not properly before this Honorable Court.

In support of its position, Plaintiffs rely on two previous cases originating from Arizona and Indiana, both of which were decided prior to U.S. Supreme Court's decision in *Armstrong*.  These two cases revolve around the applicability of 42 U.S.C. 1396a(a)(23), the "freedom of choice" provisions.  <u>They are inapplicable because they addressed state statutes that excluded abortion providers as a "class,"</u>

something Louisiana has not done.

At the outset, and as mentioned above, historically, the freedom of choice provisions were put into place to allow recipients the freedom of choice to choose among Medicaid providers that were qualified and willing to provide services. It was also established to prevent government intrusion into the recipient's choice of provider. This provision was not historically utilized to stand for the proposition that recipients were entitled to one particular Medicaid provider.

In the distinguishable cases of *Planned Parenthood Arizona, Inc. v. Betlach* and *Planned Parenthood of Indiana, Inc. v. Commissioner of the Indiana State Department of Health*, the states passed state statutes that restricted funding to exclude providers that provided abortion services. *Planned Parenthood Arizona, Inc. v.* Betlach, 727 F.3d 960 (2013) and *Planned Parenthood of Indiana, Inc. v. Commissioner of the Indiana State Department of Health*, 699 F.3d 962 (2012). To the best of LDHH's knowledge, the States in these two cases did not attempt to utilize an at-will termination contract clause. In those cases, the courts held that a private right existed and that a State could not terminate Medicaid funding based on "scope of services," nor could a State seek to eliminate a class of providers from the Medicaid program.

The current matter before this Court is clearly distinguishable from these two cases. As to the question of granting a private right of action to enforce the Medicaid Act, the LDHH contends that this Court and the U.S. Fifth Circuit Court of Appeals are not bound by these prior cases clearly based on differing facts and

12

law.  Further, a different conclusion should be reached based on facts and the applicability of relevant law and cases, especially considering the recent pronouncement of the United States Supreme Court in *Armstrong*.  Neither LDHH nor the State of Louisiana has passed a statute or rule seeking to terminate funding, or the Medicaid provider agreements, of a specified class of providers. Neither has LDHH made any decisions based on the scope of services that PPGC provides.  In fact, LDHH has purposefully utilized a statutorily authorized "at-will" termination provision that was agreed to by PPGC when it determined to become a Louisiana Medicaid provider.

### B. <u>Plaintiffs have contractually agreed to at-will termination and thereby relinquished any rights they may have had under §1983</u>

If this Honorable Court takes the position that Plaintiffs, inclusive of the provider and recipients, have a right to enforce the applicable sections of the Medicaid Act notwithstanding the Supreme Court's recent ruling in *Armstrong*, LDHH contends that, due to the application of the La R.S. 46:437.11(D)(1) and the at-will termination provision, PPGC is no longer "qualified" to provide services in Louisiana Medicaid.  In order to be qualified to provide Medicaid services in Louisiana, and for Louisiana to obtain federal matching funds, PPGC must have a provider agreement with Louisiana Medicaid.  Since the provider agreement was terminated, based on clear statutory authority and contract law, PPGC is no longer qualified to provide services to Louisiana Medicaid participants.  To the LDHH's knowledge, PPGC has always been represented by counsel and has never complained of the existence of the "at-will termination" provisions.  The statute

providing for the same was enacted by the Louisiana Legislature and has never been constitutionally challenged. The plaintiff recipients were not privy to this contract between Louisiana Medicaid and PPGC and should not be allowed to petition this Court to sever that agreed-upon contract clause. The plaintiff recipients are not proxies for PPGC in its contract negotiations with Louisiana and they have full freedom of choice to choose among the over 2,000 of active Louisiana Medicaid providers.

### C. <u>Procedural due process requires a property interest in the Medicaid provider agreement</u>

LDHH submits that this Court must consider the threshold procedural issue of whether or not PPGC has any property interest in its Medicaid Provider Agreement that gives rise to procedural due process. For the reasons set forth below, LDHH submits that PPGC has no property interest in its Medicaid Provider Agreement, and this leaves it with no right to procedural due process.

The United States Supreme Court has held that the requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, (1972). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by the existing rules or understandings that stem from an independent

source, such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Other Federal circuits have consistently held that no protected property rights are implicated when states take various actions which may be adverse to Medicaid providers. *Senape v. Constantino,* 936 F.2d 687 (2nd Cir. 1991).

Two decisions, by the Second Circuit, are particularly applicable to the matter before this Court. In *Plaza Health Laboratories, Inc. v. Perales*, the court noted that, as in this case, "the combination of rights reserved by the State with regard to Medicaid providers, **allowing DSS to terminate without cause on 30 days' notice** or to terminate or suspend immediately in certain circumstances, casts doubt on whether the provider's interest in continuing as a provider, either indefinitely or for any period without interruption, is a property right that is protected by due process." *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 691 (2nd Cir. 1989) (emphasis added). The Second Circuit later referred to this determination in *Senape v. Constantino*, where it found the same reservation of rights by the state, saying those circumstances "convince us that our doubts in *Plaza Health* were well-founded and that **appellant has no property right to continued enrollment as a qualified provider**." *Senape,* 936 F.2d 687, 691 (2nd Cir. 1991) (emphasis added).

In the present matter, the Medical Assistance Program Integrity Law (MAPIL) statute vests the Secretary of LDHH with the right to terminate Medicaid providers without cause on 30 days' notice. La. R.S. 46:437.1, et seq. This right

subjects Louisiana Medicaid providers to the same type of regulatory framework governing the New York Medicaid providers in *Plaza Health* and *Senape*.

Also relevant to the State's determination is the Medicaid exclusion statute, found at 42 U.S.C. § 1396a(p).  That statute provides in part:

> **(p) Exclusion power of State; exclusion as prerequisite for medical assistance payments; "exclude defined**
>
> (1) *In addition to any other authority*, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under section 1320a-7, 1320a-7a, or 1395cc (b)(2) of this title [Medicare].
> . . . .
> (3) As used in this subsection, the term "exclude" includes the refusal to enter into or renew a participation agreement <u>or the termination of such an agreement</u>.

The First Circuit has determined that the italicized language in the Medicaid exclusion statute ("In addition to any other authority) "permit[s] a State to exclude an entity from its Medicaid program for any reason established by state law." *First Medical Health Plan v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007) (emphasis added).

Vega-Ramos recognized that "[w]hile Medicaid is a state-run program, [the state] accepts federal Medicaid funds and thus must comply with federal Medicaid laws."  Id.  In reaching its conclusion, the First Circuit quoted from the legislative history of the Medicaid Act:

> The [Medicaid exclusion] statute expressly grants states the authority to exclude entities from their Medicaid programs for reasons that the Secretary could use to exclude entities from participating in Medicare.

But it also preserves the state's ability to exclude entities from participating in Medicaid under 'any other authority.'  The legislative history clarifies that this 'any other authority' language was intended to permit a state to exclude an entity from its Medicaid program for *any* reason established by state law.  The Senate Report states:

> The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any reason that constitutes a basis for an exclusion from Medicare. . . . *This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program.*

*Id*. (emphasis by the court) (quoting S. Rep. 100-109, reprinted in 1987 U.S.C.C.A.N. at 700).

Pursuant to 42 C.F. R 1002.100, and the Medicaid Exclusion statute discussed above, it is clear that a State agency, such as LDHH, may impose broader sanctions against a provider if it has authority to do so under State law.  Pursuant to State law, all Louisiana Medicaid provider agreements shall be terminable within 30 days' written notice to the provider.  Thus, by clear application of federal regulation, in concert with State authority, LDHH has the ability to proceed against PPGC by giving it 30 days' notice of the termination of its Medicaid provider agreements.  By further application of State law, at La.R.S. 46:107, PPGC has the ability to seek administrative review of these termination actions, which PPGC has failed to do.

In short, the above federal cases establish that Medicaid providers do not have a property right in their Medicaid provider agreement and the income stream that it generates.  Therefore, Medicaid providers, like PPGC, do not have a

constitutionally protected due process right to seek a TRO from the termination of the Medicaid provider agreement and its income stream.

Thus, it is the LDHH's position that this Honorable Court's consideration of all the jurisprudence and statutes, federal and state, should lead to the conclusion that PPGC contractually agreed to a 30 day "at-will" termination provision. This provision, along with the jurisprudence, clearly establishes that PPGC does not have a likely chance to succeed on the merits due to the contract effect. It is equally clear that PPGC does not have a private right of action under Section 1983. The recipients will have freedom of choice to choose among qualified Medicaid providers that have an active provider agreement. The plaintiff recipients should not be able to interfere with the bargained-for contract provisions of a Medicaid provider and Louisiana Medicaid.

**D. State contract law precludes Planned Parenthood from success on the merits**

If this Honorable Court decides that it has subject matter jurisdiction despite the recent holding in *Armstrong*, at its heart, the matter before this Court would be a pure matter of Louisiana contract law specifically applicable to Medicaid providers. Both parties to this matter agreed to enter into a Medicaid provider agreement with full knowledge that it could be terminated by either party, with 30 days' written notice pursuant to La. R.S. 46:437.11(D)(1). It was not until LDHH exercised its right to terminate PPGC's Medicaid provider agreements that they complained of this provision. To the best of LDHH's knowledge, PPGC has at no time, prior to the filing of this current matter, expressed its concern of this state law

18

or its application.

## II.     Plaintiffs cannot show a substantial threat that they will suffer irreparable injury

Plaintiffs, Jane Does, allege they will suffer irreparable harm due to denial of their freedom of choice of Medicaid providers and reduced access to family planning services, while PPGC alleges monetary impact and closure of their facilities.  LDHH asserts that none of these arguments have any merit.

First and foremost, as set forth above, the individual recipient plaintiffs have no private right of action under the reasoning of *Armstrong*.  If the plaintiffs are properly before this court, then they have not and will not be denied freedom of choice of qualified Medicaid providers nor have reduced access to providers that provide family planning services.  The Medicaid program has 1,146 providers in Region 1 (New Orleans Area) and 864 providers in Region 2 (Baton Rouge Area) that are either family planning clinics or provide family planning and related services.  Any physician/physician extender and appropriately certified lab can provide family planning and related services as long as it is within their license and scope.  There is nothing unique about family planning services.  There are no Medicaid services that only family planning clinics provide that could not be provided elsewhere.  [See Declaration of Ruth Kennedy ¶6-8].

Plaintiffs rely on a Seventh Circuit case and a Western District of Texas case in support of Plaintiffs' irreparable harm argument.  The *Planned Parenthood of Indiana* case is not controlling law in this Circuit and can be distinguished by the fact that the State of Indiana removed funding from an entire class of providers and

not one provider out of hundreds that can perform the same services. [Rec. Doc. 4-1, pp. 7-8, 11-12, 16-17]. The *Camacho* case involved rules limiting eligibility for Medicaid coverage. [Rec. Doc. 4-1, p. 17]. That is not at issue in the present matter. The Medicaid eligibility of the plaintiff recipients will not be affected by the termination of PPGC as a Medicaid provider.

An injury is deemed "irreparable" only if it cannot be undone through monetary remedies. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). PPGC argues that the loss of Medicaid funds will impact its budget and require them to lay off employees and close their facilities. As of July 17, 2015, the four Planned Parenthood Medicaid provider numbers have been paid $213,599.83 in total since January 1, 2015. [See Declaration of Ruth Kennedy ¶12]. For PPGC, this is a small amount of revenue that clearly does not rise to the level of irreparable injury. Furthermore, this alleged injury is purely monetary and could be undone through a monetary remedy.

### III.   Plaintiffs cannot establish that the threatened injury outweighs the threatened harm the TRO may do to LDHH

Plaintiffs allege that LDHH will suffer no injury at all if the TRO is granted. That assertion could not be further from the truth. The granting of a TRO would prevent the LDHH from their ability to govern the Medicaid program under the authority granted by the Medicaid Act. It would also contravene the Louisiana Legislature's intent to give the LDHH a right to terminate a Medicaid provider agreement at-will when she chooses to do so.

Plaintiffs rely on several cases to demonstrate that the LDHH would not

suffer any injury if a TRO is granted.  *New Orleans Home for the Incurables, Inc. v. Greenstein* can be distinguished.  [Rec. Doc. 4-1, p. 18].  In that case, the Medicaid provider agreement was terminated for cause due to an underlying license revocation action.  *New Orleans Home for the Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386, 410-11 (E.D. La. 2012).  The current matter involves an at-will termination, which term was agreed to by both parties prior to the entry of the Medicaid provider agreement.  [See Declaration of Kathy Kliebert ¶7].  The *Giovani* case from the Fourth Circuit, involved a State that enforced restrictions likely to be found unconstitutional.  *Giovani Carandola, Ltd. V. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).  [Rec. Doc. 4-1, p. 18].  There has been no claim in the current matter that La. R.S. 46:437.11 is unconstitutional.  Therefore that case cannot be relied upon as authority that the LDHH will not be harmed by the granting of a TRO.

**IV.**   **Plaintiffs have not shown that granting the TRO will not disserve the public interest**

Plaintiffs claim that the only public interest that will be served by granting a TRO is the neediest of the public will continue to have access to healthcare.  While it is certainly true that the public has an interest in the neediest of its members having access to healthcare, there has been no evidence presented that shows Medicaid recipients in the New Orleans and Baton Rouge areas will not have access to family planning and related services.  As has been previously argued, there are 1,146 Medicaid providers in Region 1 (New Orleans Area) and 864 Medicaid providers in Region 2 (Baton Rouge Area) that provide family planning and related services.  Any physician/physician extender and appropriately certified lab can

provide family planning and related services as long as it is within their license and scope.  [See Declaration of Ruth Kennedy ¶8].

## V.    Conclusion

Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be denied because plaintiffs have failed to meet their burden of persuasion.  As such, the proposed TRO does not meet the necessary requirements and should not be granted.


Respectfully submitted,


 /s/ Kimberly Sullivan_____
Stephen Russo, T.A. (La. Bar No. 23284)
Kimberly Humbles (La. Bar No. 24465)
Kimberly Sullivan (La. Bar No. 27540)
Ryan Romero (La. Bar No. 35987)
628 N. 4th Street
Baton Rouge, LA  70802
Phone:  225-342-1128
Fax:  225-342-2232
stephen.russo@la.gov
kimberly.humbles@la.gov
kimberly.sullivan@la.gov
ryan.romero@la.gov

*Attorneys for Defendant, Kathy Kliebert*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2015, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send notice of electronic filing to all counsel of record.


/s/ Kimberly Sullivan_____
Kimberly Sullivan
Attorney for Defendant Kathy Kliebert