# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| PLANNED PARENTHOOD GULF COAST, INC., ET AL., | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | Civ. Action No. 3:15cv00565-JWD-SCR |
| KATHY KLIEBERT, *Secretary, Louisiana Department of Health and Hospitals*, | ) ) ) | |
| **Defendant.** | ) ) ) | |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States has strong interests in the proper operation of the Medicaid program—which provides health care coverage to more than seventy million low income people who otherwise would likely be unable to afford health care services—and in ensuring that the States administer their federally-subsidized Medicaid programs in a manner that is consistent with the Medicaid statute.  Pursuant to 28 U.S.C. § 517, the United States respectfully submits this Statement of Interest to advise the Court of its view that, thus far, Louisiana has not proffered sufficient reasons to terminate Planned Parenthood Gulf Coast, Inc. ("PPGC") from its Medicaid program, and that terminating PPGC from its Medicaid program without providing any justification related to PPGC's qualifications to provide medical services would violate Louisiana's obligations under the Medicaid statute's "free choice of provider" provision, 42 U.S.C. § 1396a(a)(23).[1]  The United States further advises the Court of its view that Medicaid beneficiaries may enforce their statutory right under § 1396a(a)(23) to their choice of a qualified provider through a private action under 42 U.S.C. § 1983.

Louisiana receives federal funds under the Medicaid program and is thus bound by the requirements imposed by the Medicaid Act.  The Act's free choice of provider provision, 42 U.S.C. § 1396a(a)(23), gives Medicaid beneficiaries the right to receive covered services from any qualified provider that is willing to perform the services, free of interference from the State.  Moreover, Congress singled out beneficiaries of family planning services—such as those offered by PPGC—for additional protection under § 1396a(a)(23).  Thus, "a state Medicaid plan must allow any given Medicaid [beneficiary] to seek family planning care from any and all providers, subject to only two limitations: (1) the provider is 'qualified to perform the service or

---

[1]      28 U.S.C. § 517 allows "any officer of the Department of Justice . . . to attend to the interests of the United States in a suit pending in a court of the United States."  *See Rosado v. Wyman*, 397 U.S. 397, 406-07 (1970) ("Whenever possible the district courts should obtain the views of [Department of Health and Human Services].").

services required' and (2) the provider 'undertakes to provide [the patient] such services.'"
*Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 969 (9th Cir. 2013).  As explained below, a Medicaid beneficiary's right under the free choice of provider provision can be enforced, as here, under § 1983.

Here, terminating PPGC from its Medicaid program without providing any justification related to PPGC's qualifications to perform or bill for medical services would violate Louisiana's obligations under the Medicaid statute by denying Medicaid beneficiaries of their right to obtain medical care from the qualified providers of their choice.  Louisiana argues that the State Medical Assistance Programs Integrity Law ("MAPIL"), La. Rev. Stat. Ann. 46:437.11, authorizes it to terminate PPGC's Medicaid provider agreements with or without cause and that, once these agreements are terminated, PPGC is no longer a "qualified provider" for purposes of § 1396a(a)(23).  But States do not have unfettered discretion to determine that a provider is not "qualified" for purposes of federal Medicaid law.  Crucially, they cannot evade the statutory mandate of § 1396a(a)(23) through the simple expedient of incorporating "at-will" termination provisions into their Medicaid provider agreements.  To conclude otherwise would not only strip the Medicaid Act's free choice of provider provision of all meaning, but also would contravene clear congressional intent to give Medicaid beneficiaries the right to receive covered services from any qualified and willing provider.

Louisiana's interpretation of its obligations under § 1396a(a)(23) is inconsistent with the plain language of the statute and the overwhelming weight of authority.  Moreover, it conflicts with the considered and longstanding views of the United States Department of Health and Human Services (HHS), the agency to whom Congress explicitly delegated authority to interpret and apply the Medicaid statute.  For decades, HHS has repeatedly and consistently interpreted the "qualified"

language in § 1396a(a)(23) to prohibit a State from denying access to a provider for reasons

unrelated to the ability of that provider to perform Medicaid-covered services or to properly bill for

those services.  HHS's interpretation of § 1396a(a)(23) is entitled to *Chevron* deference.  And it is,

in any event, the only reasonable reading of the statute.  That interpretation has been affirmed by

the only two Courts of Appeals to have considered the issue in very similar contexts.

BACKGROUND

## I.      The Medicaid Program

The Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C.

§§ 1396 *et seq*., "is a cooperative federal-state program through which the Federal Government

provides financial assistance to States so that they may furnish medical care to needy

individuals."  *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).  "The Federal Government

shares the costs of Medicaid with States that elect to participate in the program."  *Atkins v.

Rivera*, 477 U.S. 154, 156-57 (1986).  "In return, participating States are to comply with

requirements imposed by the Act and by the Secretary of Health and Human Services."  *Id.*

To be eligible for federal funds, a participating State must develop a "plan for medical

assistance" that demonstrates compliance with the Medicaid statute's requirements and submit it

to the Secretary of Health and Human Services for approval.  *See* 42 U.S.C. § 1396a; *Wilder*, 496

U.S. at 502.  If the Secretary approves the State plan, the federal government reimburses the

State for a percentage of qualified Medicaid expenses.  The federal contribution rate varies

depending on a State's per capita income, but federal funds pay at least 50% of the cost of

providing medical assistance to Medicaid beneficiaries.  *See* 42 U.S.C. § 1396d(b).  The federal

contribution rate may be even higher for particular services.  For family planning services (such

as contraception and associated gynecological examinations provided to women of child-bearing

years), the federal government pays 90% of the cost of the services, whereas a State pays only 10% of the cost.  *See* 42 U.S.C. § 1396b(a)(5).

Although State participation in the Medicaid program is voluntary, "once a State elects to join the program, it must administer a state plan that meets federal requirements."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004).  Among other requirements, the State plan "must" provide that beneficiaries have the freedom to receive services from the qualified and willing provider of their choice.  42 U.S.C. § 1396a(a)(23).  This free choice of provider provision is broken into two parts.  Under subparagraph (A), "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  *Id.* § 1396a(a)(23)(A); *see also* 42 C.F.R. § 431.51(b)(1).  There is a narrow exception to freedom of choice that permits a State to establish "reasonable standards relating to the qualifications of providers."  42 C.F.R. § 431.51(c)(2).  As explained in more detail below, HHS has long taken the position that any State-imposed qualification-related standard must be related to the ability of the providers to perform services or to properly bill for those services.

Subparagraph (B) establishes additional protections for beneficiaries of family planning services (which, as noted above, are reimbursed at an enhanced federal rate).  It provides that "an enrollment of an individual eligible for medical assistance in a primary care case-management system . . . a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive" family planning services.  42 U.S.C. § 1396a(a)(23)(B) (cross-referencing § 1396d(a)(4)(C)).  Thus, even in the context of managed care, where a State otherwise may place certain limits on a Medicaid beneficiary's free

choice of provider, a State may not limit a beneficiary's free choice of provider of family planning services.  42 U.S.C. § 1396a(a)(23)(B); *see also* 42 U.S.C. § 1396n(b).

The statute also contains enforcement mechanisms.  HHS, through the Centers for Medicare & Medicaid Services (CMS), reviews the State's plan including any plan amendments and determines whether the State plan complies with statutory and regulatory requirements.  *See* 42 U.S.C. § 1316(a)(1), (b).  If the State does not act in compliance with an approved plan, or if an approved plan no longer complies with the requirements of the Act, the Secretary may initiate an enforcement action.  *See* 42 U.S.C. § 1396c; 42 C.F.R. § 430.35.  In addition, HHS itself may seek injunctive relief to compel compliance with provisions of the Act.  *See, e.g.*, *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967).  Finally, many provisions of the Medicaid statute, including the free choice of provider provision, are enforceable through individual lawsuits under § 1983.  *See Betlach*, 727 F.3d at 966; *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 968 (7th Cir. 2012); *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006); *Women's Hosp. Found. v. Townsend*, No. Civ. 07-711-JJB-DLD, 2008 WL 2743284, at *8 (M.D. La. July 10, 2008).

## II.    Louisiana's Medicaid Program

Louisiana participates in Medicaid through an approved State plan under which it provides family planning services and family planning-related services to eligible beneficiaries. *See* State Plan Transmittal Number 14-13 (effective July 1, 2014) (attached as Ex. A); 42 U.S.C. § 1396d(a)(4)(C).  One of the State Plan's "primary goals" of family planning services is "to increase access to services" so as to "allow improved reproductive and physical health, improved perinatal outcomes, and reduction in the number of unintended pregnancies."  Ex. A. at 4. Consistent with the free choice of provider provision, the State Plan provides that family

5

planning services may be delivered "through any enrolled Medicaid provider whose scope of

practice includes family planning services." *Id.*

ARGUMENT

As explained below, Louisiana has not thus far proffered sufficient reasons to terminate

PPGC's Medicaid provider agreements.  If Louisiana terminates PPGC from participation in its

Medicaid program without providing any justification related to PPGC's qualifications to

perform or bill for medical services, the State would violate the rights of Medicaid beneficiaries

to receive medical care from the qualified providers of their choice.[2]  Louisiana incorrectly

asserts that this Court lacks subject matter jurisdiction because Medicaid beneficiaries do not

have private rights of action to vindicate their § 1396a(a)(23) rights.  But as this Court and every

Court of Appeals to have considered the question has concluded, § 1396a(a)(23) creates a private

right of action enforceable through § 1983.  Louisiana further argues that it retains broad

authority to evade the requirements of § 1396a(a)(23) through operation of state contract law.

This argument is wholly without merit, as it would drain § 1396a(a)(23) of all meaning.  Finally,

HHS's long-held view that any State qualification standards must relate to providers' ability to

render services or properly bill for them is an eminently reasonable interpretation of the

Medicaid statute and is entitled to *Chevron* deference.

**I.      The Free Choice of Provider Requirement Confers Individual Rights That Medicaid
         Beneficiaries May Enforce in § 1983 Actions.**

As an initial matter, Louisiana is not correct that Medicaid beneficiaries lack a private

right of action to enforce their § 1396a(a)(23) rights.  Indeed, Louisiana's argument has been

squarely rejected by this Court and by every circuit to have considered the issue.  As discussed at

---

[2]        Plaintiffs' brief explains that PPGC provides a range of basic medical services to women in medically-
underserved areas.  *See* Mem. at 3, 5.

length by this Court in *Townsend*, 2008 WL 2743284, at *8, the Ninth Circuit in *Betlach*, 727 F.3d at 966, the Seventh Circuit in *Planned Parenthood of Indiana*, 699 F.3d at 968, and the Sixth Circuit in *Harris*, 442 F.3d at 459, Congress granted Medicaid beneficiaries rights under § 1396a(a)(23), which are enforceable in private actions under § 1983.[3]

Section 1983 creates a federal remedy against anyone who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  The Supreme Court has established a three-part test to determine whether a federal statutory provision creates a private right enforceable under § 1983: 1) "Congress must have intended that the provision in question benefit the plaintiff," 2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence," and 3) "the statute must unambiguously impose a binding obligation on the States."  *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  If these requirements are met, "the right is presumptively enforceable" in an action under § 1983.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).  A defendant may overcome this presumption by demonstrating that Congress foreclosed private enforcement either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with" individual private lawsuits.  *Id.* at 284 n.4.  "Gauged by this test, Medicaid's freedom-of-choice provision creates enforceable rights that a Medicaid beneficiary may vindicate through § 1983."  *Harris*, 442 F.3d at 461.

---

[3]     Louisiana argues that *Betlach*, 727 F.3d 960, and *Planned Parenthood of Ind.*, 699 F.3d 962, "are inapplicable" because they "addressed state statutes that excluded abortion providers as a 'class,' something Louisiana has not done."  Opp'n at 11-12.  This distinction is entirely irrelevant.  Section 1396a(a)(23) is violated whenever a beneficiary is denied her right to receive covered Medicaid services from "any" qualified provider of her choice willing to provide the services; it does not matter whether that provider was excluded from the Medicaid program on an individualized or class-wide basis.

First, in providing "any individual eligible for medical assistance" with free choice of the provider of that assistance, § 1396a(a)(23) uses the kind of "individually focused terminology" that "unambiguously confer[s]" an "individual entitlement" under the law. *Harris*, 442 F.3d at 461 (quoting *Gonzaga*, 536 U.S. at 283); *Townsend*, 2008 WL 2743284, at *8. Second, the right of a Medicaid-eligible individual to select from among a range of qualified providers without government interference is "administrable and falls comfortably within the judiciary's core interpretive competence." *Planned Parenthood of Ind.*, 699 F.3d at 974; *see also Townsend*, 2008 WL 2743284, at *8 ("[T]he plain language of the provision is sufficiently clear to allow for judicial enforcement."). Third, the statute is "couched in mandatory, rather than precatory, terms," as it instructs that a State "must" provide this freedom of choice. *Harris*, 442 F.3d at 461; *see also Townsend*, 2008 WL 2743284, at *8. Thus, § 1396a(a)(23) satisfies the *Blessing* and *Gonzaga* tests, *Townsend*, 2008 WL 2743284, at *8, and "unambiguously gives Medicaid-eligible patients an individual right" enforceable under § 1983. *Planned Parenthood of Ind.*, 699 F.3d at 968; *see also Betlach*, 727 F.3d at 966; *Harris*, 442 F.3d at 461.

Contrary to Louisiana's contention, the Supreme Court's recent decision in *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015), does not compel a different result. Louisiana overstates both the scope of the Court's holding in *Armstrong* and its relevance in this case.

In *Armstrong*, several Medicaid providers alleged that Idaho's Medicaid payment rates violated § 30(A) of the Medicaid Act, which requires State plans to:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

42 U.S.C. § 1396a(a)(30)(A).  The providers did not assert any claim under § 1983, but instead

sought to bring their claims directly under the Supremacy Clause, or in equity.  *See Armstrong*,

135 S. Ct. at 1386 n.*.  After rejecting the providers' argument that the Supremacy Clause

confers a private right of action, the Court held that the Medicaid Act implicitly precludes private

enforcement of § 30(A) and that, therefore, the providers could not invoke the Court's equitable

powers.  In reaching this conclusion, the Court explained that two aspects of § 30(A), taken

together, indicate congressional intent to preclude equitable relief.  First, the sole remedy

Congress provided for a State's failure to comply with § 30(A) is the withholding of Medicaid

funds by the Secretary of HHS.  *Id.* at 1385.  This fact "might not, by itself, preclude the

availability of equitable relief," the Court noted.  *Id.*  But when coupled with "the judicially

unadministrable nature of § 30(A)'s text," the Court found sufficient evidence to conclude that

Congress had implicitly precluded private enforcement of § 30(A).  *See id.* ("The sheer

complexity associated with enforcing § 30(A), coupled with the express provision of an

administrative remedy, § 1396c, shows that the Medicaid Act precludes private enforcement of

§ 30(A) in the courts.").

Louisiana's reliance on *Armstrong* is misplaced.  The availability of a private remedy

under § 1983 is a question of congressional intent, determined by reference to the particular

statutory provision at issue.  *See Suter v. Artist M.*, 503 U.S. 347, 358 n.8 (1992) (explaining that

each federal statute "must be interpreted on its own terms"); *see also Blessing*, 520 U.S. at 342

(explaining that a court must "ascertain whether each separate claim satisfies the various criteria

we have set forth for determining whether a federal statute creates rights").  Thus, the Court's

conclusion in *Armstrong* that a Medicaid provider cannot enforce § 30(A) through an action in

equity has little bearing on whether a beneficiary can enforce a separate provision of the Medicaid statute, the free choice of provider requirement, through an action under § 1983.

The free choice of provider provision differs from § 30(A) in at least two crucial respects. First, while § 30(A) lacks the "sort of rights-creating language needed to imply a private right of action," *Armstrong*, 135 S. Ct. at 1387, § 1396a(a)(23) "unambiguously" confers on Medicaid patients the "right to receive care from the qualified provider of their choice." *Planned Parenthood of Ind.*, 699 F.3d at 974. Specifically, § 1396a(a)(23) requires all State Medicaid plans to provide that "*any individual* eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23) (emphasis added). "Medicaid patients are the obvious intended beneficiaries" of this provision, which "does not simply set an aggregate plan requirement, but instead establishes a personal right to which all Medicaid patients are entitled." *Planned Parenthood of Ind.*, 699 F.3d at 974. *See also Betlach*, 727 F.3d at 966 ("While express use of the term 'individuals' or 'persons' or similar terms is not essential to finding a right for § 1983 purposes, usually such use is sufficient for that purpose."). Thus, as this Court has held, while § 30(A) "speaks only in terms of policy and practice and is not concerned with individuals or a particular class of individuals, . . . the Freedom of Choice Provision speaks directly to the eligible 'individuals' under Medicaid and ensures their ability to personally seek medical assistance." *Townsend*, 2008 WL 2743284, at *8.

Second, whereas the *Armstrong* Court found § 30(A) to be "judicially unadministrable," noting that "[i]t is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate," *Armstrong*, 135 S. Ct. at 1385, the free choice of provider provision, in contrast, supplies "concrete and objective standards for enforcement," *Betlach*, 727 F.3d at 967. As

explained above, § 1396a(a)(23) provides that any individual Medicaid beneficiary is free to choose any provider so long as the provider (1) is "qualified to perform the service or services required," and (2) "undertakes to provide [the beneficiary] such services." 42 U.S.C. § 1396a(23)(A). Thus, in contrast to § 30(A)'s "broad" and "judgment-laden standards," *Armstrong*, 135 S. Ct. at 1385, the free choice of provider provision supplies "objective criteria, well within judicial competence to apply," *Betlach*, 727 F.3d at 967.[4]

Citing *Armstrong*, Louisiana further argues that "Congress impliedly foreclosed a § 1983 action by creating a comprehensive enforcement scheme" under 42 U.S.C. § 1396c. Opp'n at 10. Section 1396c authorizes HHS to withhold Medicaid funds from a State whose Medicaid plan fails to conform to the statutory criteria. *See* 42 U.S.C. § 1396c. But while § 1396c represents one means of enforcing the Medicaid statute's requirements, it surely is not the only means. *See Wilder*, 496 U.S. at 521-22 (rejecting the contention that the Secretary's authority to "curtail federal funds to States whose plans are not in compliance with the Act" warrants the inference that Congress precluded any private enforcement of Medicaid Act requirements under § 1983). For example, as the Supreme Court recently explained, "[t]he fact that the Federal Government can exercise oversight of a federal spending program and even withhold or withdraw funds . . . does not demonstrate that Congress has 'displayed an intent not to provide the more complete and more immediate relief that would otherwise be available under *Ex parte Young*.'" *Va. Office for Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (quoting

---

[4]       The Court in *Armstrong* did not address the third prong of the *Blessing/Gonzaga* test, but, as noted above, § 1396a(a)(23) clearly meets this requirement, as it "is plainly couched in mandatory terms," requiring that all States "must provide" in their Medicaid plans that beneficiaries may obtain medical care from any provider qualified to perform the service. *See Townsend*, 2008 WL 2743284, at *8; *Planned Parenthood of Ind.*, 699 F.3d at 974.

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)).[5] Indeed, the Courts

of Appeals have repeatedly concluded that many Medicaid Act requirements may be enforced

through § 1983 actions, notwithstanding HHS's administrative enforcement powers under

§ 1396c.  *See, e.g.*, *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 602-07 (5th Cir. 2004)

(concluding that § 1396a(a)(10) can be enforced under § 1983).[6]  Thus, while § 1396c may

"suggest[ ]" that Congress intended to preclude other methods of enforcing § 30(A), *Armstrong*,

135 S. Ct. at 1385, it does not demonstrate congressional intent to foreclose all other avenues of

relief for violations of other provisions in the Medicaid statute, especially where Congress has

used rights-creating language, as in § 1396a(a)(23).[7]

    In short, because § 1396a(a)(23) evinces unambiguous congressional intent to create a

right of action for Medicaid beneficiaries—and the Supreme Court's holding in *Armstrong* does

not suggest otherwise—it is enforceable under § 1983.

---

[5]     The doctrine of *Ex parte Young* "normally allows federal courts to award prospective relief against state officials for violations of federal law."  *Stewart*, 131 S. Ct. at 1634.

[6]     *See also Doe v. Kidd*, 501 F.3d 348, 355-57 (4th Cir. 2007) (§ 1396a(a)(8)); *Watson v. Weeks*, 436 F.3d 1152, 1159-62 & n.8 (9th Cir. 2006) (§ 1396a(a)(10)); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 190-93 (3d Cir. 2004) (§§ 1396a(a)(8), 1396a(a)(10), 1396d(a)(15)); *Rabin v. Wilson-Coker*, 362 F.3d 190, 201-02 (2d Cir. 2004) (§ 1396r-6); *Gean v. Hattaway*, 330 F.3d 758, 772-73 (6th Cir. 2003) (§ 1396a(a)(3)).  *See also Cruz v. Zucker*, No. 14-cv-4456 (JSR), 2015 WL 4548162, at *11 (S.D.N.Y. July 29, 2015) (§§ 1396a(a)(10)(A), 1396a(a)(10)(B), 1396a(a)(43)).

[7]     Indeed, the text of the Medicaid statute itself recognizes that many of the statute's provisions will be enforceable through a private action.  After the Supreme Court held in *Suter*, 530 U.S. at 363, that a certain provision (not otherwise relevant here) of the Social Security Act could not be enforced through a § 1983 action, Congress responded with legislation clarifying that a provision of the Act "is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan."  42 U.S.C. § 1320a-2.  Congress specified that its legislation "is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements."  *Id.*; *see also* 42 U.S.C. § 1320a-10.  The accompanying legislative history explained that "[t]he intent of the provision is to assure that individuals who have been injured by a State's failure to comply with the Federal mandates of the State plan titles of the [SSA] are able to seek redress in the federal courts to the extent they were able to prior to [*Suter*]."  H.R. CONF. REP. No. 103-761, at 926 (1994).

**II.     Terminating PPGC from Louisiana's Medicaid Program Without Cause Would Violate Medicaid's Free Choice of Provider Requirement.**

Through the free choice of provider provision, Congress required States to allow Medicaid beneficiaries to choose among qualified medical providers without interference from the State.  Louisiana, however, claims that under state contract law, it has essentially limitless authority to restrict beneficiaries' freedom of choice.  Specifically, Louisiana argues that MAPIL's at-will termination clause authorizes the State to terminate PPGC's participation in its Medicaid program without cause, rendering it no longer "qualified" under § 1396a(a)(23).  Louisiana's position conflicts with the plain text of § 1396a(a)(23) and would render numerous provisions of the Medicaid statute meaningless.  Moreover, it conflicts with HHS's longstanding interpretation of the free choice of provider provision, to which deference is owed.

**A.   States Do Not Have Unfettered Discretion To Exclude Providers from the Medicaid Program.**

Section 1396a(a)(23)(A) is meant to provide real, not illusory, protection for Medicaid beneficiaries against State interference in their choice of provider.[8]  In addition, Congress singled out family planning services—such as those provided by PPGC—for particular protection, providing that even in the managed care setting, the State "shall not restrict the choice of the qualified person from whom the individual may receive" family planning services.  42 U.S.C. § 1396a(a)(23)(B); *see also* 42 U.S.C. § 1396n(b) (providing that "[n]o waiver under [§ 1396n] may restrict the choice of the individual in receiving" family planning services).  Thus, Congress clearly intended that there be no restrictions on access by Medicaid beneficiaries to the qualified and willing family planning providers of their choice.  *See Betlach*, 727 F.3d at 969.

---

[8]     Plaintiffs' brief indicates that PPGC provides Medicaid beneficiaries with routine physical exams, contraception and contraceptive counseling, screening for breast cancer, screening and treatment for cervical cancer, testing and treatment for certain sexually transmitted infections, pregnancy testing and counseling, and certain procedures including biopsies and colposcopies.  *See* Mem. at 3.

From this sweeping mandate, Congress carefully delineated several narrow exceptions when a beneficiary might not be able to obtain services from the provider of his or her choice. For example, the statute provides that a State may deny payment to a person or entity convicted of a felony.  *See* 42 U.S.C. § 1396a(a)(23).  Or, a State may—if the Secretary allows it—limit beneficiary choice to providers that meet certain "reimbursement, quality, and utilization standards," but only so long as those standards "are consistent with access, quality, and efficient and economic provision of covered care and services" and "such restriction does not discriminate among classes of providers on grounds unrelated to their demonstrated effectiveness and efficiency in providing those services."  42 U.S.C. § 1396n(b)(4).  Or, "a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation" in Medicare, such as conviction for a crime related to the program or to patient neglect or abuse.  42 U.S.C. § 1396a(p)(1); 42 U.S.C. § 1320a-7.

Louisiana does not argue that its termination of PPGC's participation in its Medicaid program falls within any of these carefully constructed exceptions or that PPGC is otherwise "unqualified" in any conventional sense.  Instead, Louisiana argues that by virtue of state contract law, it has unfettered discretion to terminate PPGC's Medicaid provider agreement, with or without cause.[9]  Once PPGC's provider agreements are terminated, Louisiana reasons, PPGC is no longer a "qualified provider" for purposes of § 1396a(a)(23).  Under Louisiana's interpretation, a State could terminate a provider's agreement for reasons entirely unrelated to the ability of the provider to perform services or to properly bill for those services—or for no reason at

---

[9]     MAPIL provides that "[u]nless the provider agreement is terminated by the Secretary for cause as provided in Paragraph (2) of this Subsection, a health care provider agreement shall be effective for a stipulated period of time, shall be terminable by either party thirty days after receipt of written notice, and shall be renewable by mutual agreement."  La. Rev. Stat. Ann. 46:437.11, subsection D(1).

14

all—and the federal government would be required to support that choice.  That is not what Congress intended.  Louisiana's rationale flatly contradicts the plain text of § 1396a(a)(23) and would effectively nullify numerous provisions of the Medicaid statute pertaining to the statutory guarantee that Medicaid beneficiaries be permitted to select the qualified provider of their choice.

> B.  Louisiana's Interpretation of its Obligations under the Free Choice of Provider Provision is Unreasonable.

Louisiana's expulsion of competent Medicaid providers from its Medicaid program without cause, solely by virtue of MAPIL's terminable-at-will provision, would render beneficiaries' rights under § 1396a(a)(23) illusory and would violate federal law.  As explained above, States do not have carte blanche to expel competent family planning providers from their Medicaid programs.  But Louisiana argues that it is authorized to exclude PPGC from its Medicaid program, regardless of whether the exclusion furthers any other objective of the Medicaid program.  Indeed, it appears that the State has yet to provide any reason at all for terminating PPGC's Medicaid provider agreement.  Louisiana's interpretation of its obligations under § 1396a(a)(23) is both implausible on its face and impossible to reconcile with the cases that have interpreted the free choice of provider requirement.  *See, e.g.*, *Chisholm v. Hood*, 110 F. Supp. 2d 499 (E.D. La. 2000).  As the Seventh Circuit has explained, "[i]f the states are free to set any qualifications they want—no matter how unrelated to the provider's fitness to treat Medicaid patients—then the free-choice-of-provider requirement could be easily undermined by simply labeling any exclusionary rule as a 'qualification.'  This would open a significant loophole for restricting patient choice, contradicting the broad access to medical care that § 1396a(a)(23) is meant to preserve."  *Planned Parenthood of Ind.*, 699 F.3d at 978.  Louisiana's position is particularly untenable with respect to providers of family planning services such as

PPGC because of the additional protections provided to beneficiaries of family planning services.  *See* 42 U.S.C. § 1396a(a)(23)(B).

Not only does Louisiana's interpretation of § 1396a(a)(23) eviscerate the free choice of provider guarantee, it renders the specific exceptions to this provision entirely meaningless. Louisiana's interpretation thus violates the cardinal principle of statutory interpretation "that a court should give effect, if possible, to every clause and word of a statute."  *Moskal v. United States*, 498 U.S. 103, 109 (1990).  For example, if a State had unfettered authority to exclude providers from Medicaid, Congress would not have specified that a State may exclude a provider convicted of a felony for an offense that is inconsistent with the best interests of Medicaid beneficiaries.  It is not plausible that Congress went to the effort to mandate that States provide beneficiaries with the right to select their providers (particularly and expressly in the context of family planning services), carefully defined the exceptions to this rule, but then left States essentially unlimited residual authority to curtail beneficiary choice.

Trying to avoid the absurd consequences of its interpretation, Louisiana invents a new rule—untethered to any statutory text—that the free choice of provider provision is satisfied so long as the State's restriction does not eliminate *all* choice.  *See* Opp'n at 7 ("[I]ndividual recipients are not entitled to a particular Medicaid provider.").  As Louisiana argues, the State "is indeed offering freedom of choice required by the statute" because "[t]here are 2,010 qualified providers that provide the same and additional medical services than those provided by the Plaintiff's two locations in Louisiana."  *Id.* at 9.  But Louisiana's contention that the free choice of provider requirement is satisfied if patients of PPGC can obtain family planning services from other providers "inverts what the statute says."  *Planned Parenthood of Ind.*, 699 F.3d at 979. "Section 1396a(a)(23) does not simply bar the states from ending *all* choice of providers, it

16

guarantees to every Medicaid beneficiary the right to choose *any* qualified provider." *Id.*

Indeed, "[t]here is no exception to the free-choice-of-provider requirement for 'incidental'

burdens on patient choice" of qualified providers. *Betlach*, 727 F.3d at 975.[10]

Nor does 42 U.S.C. § 1396a(p)(1), cited by Louisiana, change the result here. That

section provides: "In addition to any other authority, a State may exclude any individual or entity

[from participating in its Medicaid program] for any reason for which the Secretary could

exclude the individual or entity from participation in [Medicare]." 42 U.S.C. § 1396a(p)(1). To

be sure, § 1396a(p)(1) "contemplates that states have the authority to suspend or to exclude

providers from state health care programs for reasons other than those upon which the Secretary

of HHS has authority to act." *Guzman v. Shewry*, 552 F.3d 941, 949 (9th Cir. 2009). But

§ 1396a(p)(1) is not a sweeping grant of authority that allows the States to disqualify any

provider from participating in Medicaid for reasons unrelated to the purposes of the Medicaid

Act. Rather, as the Ninth Circuit explained, § 1396a(p)(1) is a "standard savings clause" which

"signals only that what follows is a non-exclusive list" and "does not imply that the states have

an unlimited authority to exclude providers for any reason whatsoever." *Betlach*, 727 F.3d at

972. Notably, the provision refers to "any *other* authority" (emphasis added), followed by a

provision providing States with authority to exclude providers on specified grounds. "This

sequence indicates that the Medicaid Act itself must provide that 'other' authority, just as it

supplies the 'authority' covered by the rest of the subsection. Were it otherwise—were States

---

[10]     Moreover, Plaintiffs' brief notes the difficulty that many Medicaid beneficiaries face in accessing basic medical care in the areas PPGC serves. As Plaintiffs explain, in at least one of these medically-underserved areas, PPGC is the largest provider of medical services to women. *See* Mem. at 6.

free to exclude providers as they see fit—then the bulk of § 1396a(p)(1) itself would be

unnecessary, as the 'authority' it supplies would be superfluous." *Id.*[11]

      C.  <u>HHS's Interpretation of the Free Choice of Provider Provision is Entitled to Deference.</u>

Louisiana's interpretation of its obligations under the free choice of provider provision is not

only implausible but also conflicts with the longstanding view of HHS, the agency charged by

Congress to administer the Medicaid program.  For decades—as reflected in regulations interpreting

§ 1396a(a)(23), CMS's Medicaid Manual, and its review of State Medicaid plan amendments—

HHS has consistently interpreted the "qualified" language in § 1396a(a)(23) to prohibit a State from

denying access to a provider for reasons unrelated to the ability of that provider to perform

Medicaid-covered services or to properly bill for those services.  This longstanding interpretation is

entitled to deference under *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

Under its broad statutory authority to promulgate regulations regarding Medicaid, 42

U.S.C. § 1302(a), HHS issued a regulation explaining that States may "[s]et[] reasonable

standards relating to the qualifications of providers."  42 C.F.R. § 431.51(c)(2); *see also* CMS,

State Medicaid Manual § 2100 (attached as Ex. B) (States may "impos[e] reasonable and

objective qualification standards" for providers).  In specific contexts where CMS has applied

the freedom of choice provision, CMS has long made clear that "reasonable and objective"

qualifications must be related to the ability of health care providers to provide those services, or

---

[11]     The cases that Louisiana cites provide no support for its position.  "In *First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46 (1st Cir. 2007), for instance, the First Circuit simply recognized the point we have just made—that states may exclude providers from participating in Medicaid for reasons not listed in § 1396a(p)(1)."  *Planned Parenthood of Ind.*, 699 F.3d at 979.  "*Vega-Ramos*, moreover, involved a conflict-of-interest rule applicable only in Puerto Rico; the First Circuit had no reason to consider the effect of the free-choice-of-provider requirement, which does not apply to Puerto Rico's Medicaid program."  *Id.* (citing 42 U.S.C. § 1396a(a)(23)(B)).  Additionally, *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980) rejected a due process claim, but in construing the statute, the Court acknowledged that § 1396a(a)(23) "gives recipients the right to choose among a range of qualified providers, without government interference," and "[by] implication, it also confers an absolute right to be free from government interference with the choice to remain in a home that continues to be qualified."  *Id.* at 785.

appropriately bill for them.  Consistent with this understanding of the freedom of choice

provision, HHS has not hesitated to disapprove State plan amendments that impose restrictions

on providers unrelated to their fitness to provide or properly bill for Medicaid services.[12]

Louisiana's interpretation of the freedom of choice provision—that a State may exclude

any provider for any reason or no reason at all based on a terminable at will provision in state

law—is not even a plausible reading of the statute, and is certainly not compelled by the text of

the provision.  Moreover, it undermines the provision's intent.  Therefore, unless the Secretary's

interpretation is impermissible or unreasonable, this Court must defer to the Secretary's

interpretation.  *See Hood*, 391 F.3d at 598 (holding that CMS interpretation of relevant statutory

provisions, as embodied in its approval of State Medicaid plans, is entitled to *Chevron*

deference).[13]  HHS's longstanding interpretation—that the statutory language "qualified to

---

[12]     It has long been HHS policy, in the context of targeted case management services (a type of medical assistance covered under Medicaid), that States may set only those qualifications upon providers that are "reasonably related to the case management functions that a provider is expected to perform [and that] reasonable provider qualifications are necessary to assure that case managers are capable of rendering services of acceptable quality."  State Medicaid Manual § 4302.2; *see also* 42 Fed. Reg. 64345 (Nov. 16, 1977) (citing the freedom of choice clause, and adopting regulation forbidding States from refusing to reimburse Indian health care providers, stating "HEW does not find it to be proper and efficient admin[istration] to arbitrarily refuse to enter into provider agreements with a class of provider, or with a provider or providers that are owned by a specific governmental entity, private entity or otherwise").  In the family planning context, in 2012 HHS disapproved an Indiana State plan amendment that would have prohibited the State Medicaid agency from entering into a contract or grant with providers that perform abortions or operate facilities where abortions are performed, except for hospitals or ambulatory surgical centers.  CMS, Decision of the Administrator Disapproving the Indiana State Plan Amendment 11-011 (2012).

[13]     As the D.C. Circuit has explained, Congress explicitly granted the Secretary authority to review and approve State Medicaid plans for medical assistance.  *See Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 822 (D.C. Cir. 2004).  "In carrying out this duty, the Secretary is charged with ensuring that each state plan complies with a vast network of specific statutory requirements."  *Id.*  "Through this 'express delegation of specific interpretive authority,' . . . the Congress manifested its intent that the Secretary's determinations, based on interpretation of the relevant statutory provisions, should have the force of law."  *Id.* (quoting *United States v. Mead*, 533 U.S. 218, 229 (2001)).  "The Secretary's interpretations of the Medicaid Act are therefore entitled to *Chevron* deference."  *Id.  See also Pharm. Research and Mfrs. of Am. v. Walsh*, 538 U.S. 644, 680 (2003) (granting *Chevron* deference to Secretary's determination of whether State Medicaid program is consistent with Medicaid's objectives); *Hood*, 391 F.3d at 598 (citing *Thompson*).  Moreover, even HHS's "relatively informal CMS interpretations of the Medicaid Act, such as the State Medicaid Manual" are "entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary under the Act."  *Id.* at 590 n.6.  In any event, for the reasons discussed above, the Medicaid statute unambiguously forecloses Louisiana's position, and there is thus no need for the Court to address

provide the service" means competent to provide the service and bill for it—is eminently reasonable.  It is supported by the common meaning of "qualified," as meaning "fitted (as by training or experience) for a given purpose."  Merriam-Webster's Dictionary 1077 (11th Ed. 2003).  Moreover, the agency's interpretation recognizes the role for States to set reasonable restrictions related to a providers' ability to provide competent and skilled services, while declining to read the free choice of provider provision out of the statute altogether, as Louisiana desires.  HHS's interpretation of the freedom of choice provision under authority delegated to it by Congress is therefore entitled to deference.

## CONCLUSION

The United States has substantial interests in assuring that the States administer their federally-subsidized Medicaid programs in a manner that is consistent with federal law.  In accordance with the principles set forth herein, the Government respectfully submits that application of the appropriate principles of law in this matter supports the conclusions that Medicaid beneficiaries may enforce the requirements of the Medicaid statute's free choice of provider requirement, 42 U.S.C. § 1396a(a)(23), through an action under § 1983, and that terminating PPGC from its Medicaid program without providing any justification related to PPGC's qualifications to perform medical services would violate Louisiana's obligations under § 1396a(a)(23).

Respectfully submitted this 31st day of August, 2015,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

---

CMS's interpretation of the free choice of provider requirement.  *See Planned Parenthood of Ind.*, 699 F.3d at 980 ("*Chevron* deference is triggered only when a statute is ambiguous").

SHEILA M. LIEBER
Deputy Director, Federal Programs Branch

JOEL MCELVAIN
Assistant Director, Federal Programs Branch

*/s/ Megan A. Crowley*
MEGAN A. CROWLEY
(N.Y. Bar No. 4930376)
Trial Attorney
United States Department of Justice
Civil Division − Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20001
Email: megan.a.crowley@usdoj.gov
Telephone: (202) 305-0754
Fax: (202) 616-8470

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that on August 31, 2015, a copy of the foregoing Statement of Interest was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all parties/counsel of record by operation of the court's electronic filing system.

*/s/ Megan A. Crowley*
MEGAN A. CROWLEY